Thank you, Your Honor. May it please the Court, my name is Jeremy Gutman, and I'm Rep. Helland at Arrow v. Passley. On this appeal, we ask the Court to find that in applying the Guideline for Attempted Murder, Krupalu erred in two different ways. First, by finding that there was the required intent to kill and the intent to cause death. Second, it was a determination that there was premeditation and that would lead us to murder in the first degree or attempted murder in the first degree. As to the intent question, this Court reviews for clear error, which is a deferential standard, but in this case it is not the most deferential standard for this. This case did not involve credibility determinations. There were a lot of witnesses. But the question for this Court is whether the evidence viewed in its entirety plausibly establishes that the government met its burden of proving my preponderance that Mr. Passley intended to cause the death of the individual involved. If the evidence merely shows, or shows at best, that it's equally likely that he had a lesser intent, such as an intent to scare or possibly injure, that would not be proof of my preponderance. On the facts here, and if you consider all of the facts, and we believe that neither the government nor the Court below addresses all of the relevant facts, the evidence here goes along the way toward showing my preponderance that Mr. Passley did not intend to cause death. I was going to say the bullet was lodged just a few inches from the head of the driver of what appears to be behind a plate that was near the shoulder. There's a somewhat misleading way that this has somehow been transformed, both in the government's brief and in the Court's decision, into a shot directly at the driver's head. In fact, the shot was shot directly into the side of the van. If you look at the photograph, I believe this is Government Decision 7, and several others, the photographs make it clear the bullet was shot at the side of the van in the opposite, or outside of the passenger, the cargo compartment behind the passenger compartment. So it was not a shot directly at the driver's head, and in fact... It was a fast-moving situation, right? It was a fast-moving situation. But your typical New York City rage? Well, that's basically what it is, and that's how everyone characterized it. It was a rogue And that's relevant to the second point, which I'll turn to, I hope. But I do want to say with regard to the intent finding, the reason I say the evidence comes close to proving a burden that the defense doesn't have, that the intent was not to kill, if that had been his intent. First of all, he had an opportunity to shoot directly at the head, because we know from the statements of the driver that he was able to describe the gun inside the car, so clearly his face would have been visible right in the window. But the shot wasn't through the window, it was at the side of the van. And the gun had five more bullets, but Mr. Gadsden fired once, clearly did not injure the driver. He could be seen through the window and continued driving. And as soon as the shot was fired, Mr. Gadsden immediately left. There was no pursuit, there was no further shot. If his intent had in fact been to kill, he had plenty of opportunity to fulfill that purpose. The evidence here suggests that his purpose was accomplished when he fired the shot at the side of the van, which certainly would have expressed his rage and sent a message to the defense. And the evidence really supports, if you look at all of the evidence, it supports the conclusion that that in fact was his intent, and it doesn't reach the level where a court could reasonably go the extra thing that I think is significant. The only other evidence was evidence regarding a threat that was supposedly made during the outset of this road rage incident. And there's a point that I didn't identify clearly in my brief that I want to mention, which is that the court, because there's reference to using the word kill, there was conflicting testimony on that. The passenger never mentioned any threat in this statement at all. And the driver at one point said, kill, and used another expression at another point. And in footnote five of the judge's, I'm sorry, footnote one of the court's decision, the court specifically said it could have been either one. What the evidence shows is that it was a threat to at least seriously injure. So the court did not find that this was a threat to kill. So taking all of those facts, there's just simply not enough to support an inference of that wholeness. In fact, going on in Mr. Gessie's mind, his mens rea was an intent to cause an individual's death. You said, you started to say that there were facts the district court didn't consider. What facts did the district court not consider? The district court did not consider the fact that there were five more bullets found in the gun, which was recovered shortly after that, and that the gun was operable. There was no evidence that the gun jammed or anything like that. So that's not addressed. Were you counsel? Were you counsel in the district court? I was. So you're the person who set forth the one-shot rule. Well, I... Don't get me wrong. It may be. I'm not suggesting that under no circumstances could a single shot establish... Lincoln only got one, didn't he? No, your argument is a single shot when there are more bullets available constitutes a no intent to kill rule. I think where there's a single shot and an opportunity to continue firing, there must be something more than that to get you to a conclusion that the intent was in fact to I'm not suggesting a hard and fast rule about that there could never be a single shot that establishes the intent, but here I submit it doesn't. As to the finding of premeditation, that, of course, requires the defendant with a cool mind engage in deliberation and plan and in fact deliberate during that period. The court's finding here was that Mr. Hansley acted in a fit of rage and with a cool mind. It's impossible, I would submit, to find premeditation based on that finding of fact. You can call something a road rage incident, but where four minutes elapses between cutting somebody off with a car and shooting the gun into the front portion of the vehicle, why wouldn't that be consistent with premeditation? Well, first of all, it's less than four minutes. Four minutes was the time from the initial incident to when the car is seen about a block away. So, in fact, we don't believe the incident lasted more than three minutes. The description of the incident allows no moment for calm reflection. He dropped the passengers from his vehicle out of the car before he then resumed his chase, if that's the right word, with the van, right? Your Honor, the point is that there was not an opportunity for calm reflection during that period. During that whole time, the woman in the car is yelling. He's yelling back at her, I'm going to kill you. Look, it's not the assassination of Paul Castellano. It's not a lot of planning, but the point is that premeditation doesn't require that kind of planning, right? It just said that you intended to do it and that it wasn't just a spontaneous moment. I don't think that's what the case law suggests. And what the court here specifically found that really undermines this finding is that he found that there was time to deliberate, but the defendant failed to deliberate. So it really turns the idea of premeditation on its head. Instead of a plan formulated with a cool mind, which I suggest he never had a cool mind. By the way, there was also evidence that was disregarded in the defense that this particular defendant had had a traumatic brain injury and had seizures as a result of his own medication that causes emotional disturbances and would make it particularly hard for him to calm down. And the fact is, the evidence from all the witnesses, he never had a moment where he calmed down. It was three minutes and people were yelling the whole time. He's yelling when the car approaches the other car. There's no moment when he stopped being agitated from the initial decision. And the finding by the court below is, although he had time to deliberate, and as the court put it, and stepped back from the impulsive decision he made at the outset, he failed to do it. He failed to deliberate. And failing to deliberate cannot be reconciled with the case law. It talks about, you know, it defines deliberation and premeditated act following the deliberation. So... You've got two minutes for a rebuttal, so we'll hear from Mr. Toporowski. Am I saying that right? You did wrong. Really? Toporowski, I think, basically got it. It's a hard one. Thank you and thank you. We support Adam Toporowski on behalf of the United States. There was ample evidence for the district court to find, by a preponderance of the evidence, that the defendant's actions constituted an assault with intent to commit murder. As the defendant intended to kill victims, the government presented evidence that the defendant threatened to kill Lester Brown. He made a gesture referencing his firearm to Brown. He made a U-turn to follow his victims. He drove his vehicle as close as possible to the victims, pull up right alongside them. He pointed his firearm at Brown and he fired at Brown. The government presented evidence that the bullet missed Brown's head by mere inches and was fired at an extremely close distance. The defendant's contrary arguments are not persuasive and they did not persuade the district court. If the defendant, for example, merely meant to threaten Brown, wouldn't the gesturing and the threatening beforehand have been enough? Couldn't he have just shown the firearm or fired the gun into the air or closer to the ground? The idea that the defendant missed his victim by mere inches, by chance, is just not plausible. He intended to shoot Brown in the head and he just missed. The government also presented ample evidence in the district court to find that the defendant acted with premeditation. The defendant exhibited calculated behavior, including dropping off the woman and the child in his car and then following his victims and getting as close as he could to them. That was pursued. Let me ask you, counsel. Judge Kuntz, did he deploy what one might call a standard articulation of district judges that he was aware that the guidelines were advisory and that he was basing his decisions on the full record before him? Was there something akin to that at some point? Your Honor, I'm not sentencing. I believe Judge Kuntz read the entire PSR and he said that he had reviewed all the parties' briefings and everything that each party had said. All right, but he didn't say something like, okay, yeah, there might be room to quibble whether this is first or second degree murder. I don't care what you call it. You could call it a ham sandwich, but this kind of conduct merits this kind of sentence. He didn't say anything like that, did he? He did not say that specifically. He did reference that it was serious conduct and that was part of why he sentencing the defendant, but he did not make any statement about the guidelines being non-relevant, but that regardless of where he falls in the guidelines, the defendant had the same sentence. Perhaps just one quick thing. Just because it's been referenced multiple times that Judge Kuntz stated that he failed to reflect, that's really respectfully being taken a bit out of context. Judge Kuntz's opinion states that the defendant demonstrated his cool, calculated actions and intent. The defendant then discharged the woman and child from his car, followed the van, drove up to the side of the van, and deliberately discharged his gun at the driver's head. The entire encounter lasted long enough for the defendant to engage in calm reflection, to deliberate, and to step back from his premeditated attempt to murder the victim. Then it says he failed to do so. That's clearly referencing that he's failing to step back from his premeditated attempt to murder. He's not saying that he failed to deliberate. Judge Kuntz's opinion is clear because the evidence shows that the defendant did think this through. He had the time to deliberate. You can deliberate in seconds. The second gun happened in seconds. The defendant is clearly in a rage at first. He threatens the victims. He has the opportunity to put this all behind him. But instead, he drives and drops off the woman and child and then pursues his victims because he wants to hurt them. He chases them down, pulls up alongside them, and fires at the head of Wester Brown. And the evidence shows, we have the picture, the bullet is directly in line with Wester Brown's head. It's not too high, it's not too low, and it's inches away in terms of how far it hit. And the evidence also shows, because the victim said on the camera at the time, that Wester Brown actually leans further back when he's driving. So the picture we have that has the victim's head redacted, the bullet is directly in line with his head, but that bullet hole where it pierces the van is actually closer to where Wester Brown would have been sitting in the car. And that's why the victims say, wow, that metal plate had not been there in some substance. And they leave unsaid. It's obvious that if that metal plate were not there, the bullet would have struck Wester Brown in the head. That's why Wester Brown says he thought his shoulder was – he thought that his shoulder was grazed by the bullet. His shoulder hurt. So your shoulder is incredibly close to your head. This was someone who followed a victim and fired at his head after saying he was going to kill him and missed. His intentions are obvious. If there are no further questions, I think I'm going to rest my case. Thank you. Thank you. Mr. Gutman, you have two minutes for a follow-up. Thank you. I think this case provides an opportunity for this court to take a closer look at the meaning of premeditation because I think this argument confuses two concepts. Premeditation calls for there to be not just a period when you could deliberate, when you could tolerate neglect, but a period with an actual deliberation. As Mr. Toporowski just put it, the court's finding below was that there was an impulsive decision at the outset to commit murder and that he did not step back from it. I don't think that's the part that he read. I mean, he was quoting Judge Coons, but Judge Coons said that he failed to step back from the premeditated murder, right? Yes, Your Honor. He basically said that there was premeditation. He had an opportunity to step back from it, and he didn't. But that begs the question, when was that premeditation? Did he form that original – was there a moment of calm reflection? This was a road-breaking incident. The testimony of all the witnesses was he was acting irrational, he was crazy, he was acting like he was drunk. There was no moment – and after the whole incident, the immediate description of the parties was this was all a road break. There was never – and so if there was a prompt decision in the midst of that to engage in an act of murder, it cannot be said. What premeditation requires to elevate second-degree to first-degree murder, there must be some deliberation and – Why isn't the process of dropping people, other passengers, off in the car and then returning and following sufficient just in and of itself? What that shows is that he is engaged in actions that are deliberate in the sense that they are not automatic, they are not involuntary, they're not accidental. But the idea that that – that in order to – and the thing about dropping off the woman is based on speculation, that that was Mr. Tassily's idea rather than her idea, which I think the evidence supports that she was – certainly would want to get out of this situation, that she tried to defuse but couldn't defuse because he wouldn't calm down. He was so not able to be calmed down that he – when she gave him a very sensible warning that because he's on supervised release, he's likely to go to jail if he keeps engaging this altercation, he couldn't heed that advice because he was in an agitated, emotional state, and the idea that he dropped her off and she was still yelling at him and the child was screaming, and then he took actions that required driving the car one way or the other, that's very different than he calmly reflected on my intention is to cause an individual's death. And the distinction – what makes murder to the first degree a higher level is the idea that it is based on something more than a quickly formed, impulsive decision in the midst of a rape. This entire episode, there was no moment when the rape subsided. That's true whether or not you look at the evidence about the particular aspects of Mr. Tassily's brain injury and his medication. For anybody, just based on the evidence, there is no moment when he's calmed down and – I guess I'm not sure why you think that that's what the law requires for premeditation. So your view is that anybody who's agitated doesn't have the mental state for premeditation. Is that what you're saying? What's your best case for that? Because it seems to me a lot of people know exactly what they're doing. They intend to do it. They plan on it in the sense that they – it's not just sort of an impulse. But they're agitated. Agitation, I think, would – if that's – if agitation automatically makes it second-degree murder, I guess I'd like to see a case for that. Well, the Shaw case was, I guess, the leading case followed by the Second Circuit. I don't believe this court, other than endorsing that, has really spoken to this very clearly. I think maybe Simon did. But the Shaw case specifically speaks about it requires a cool mind that – so that is incompatible with being enraged. If you're in a rage, you can't have the cool mind. And what makes it premeditated is the fact that there's both deliberation and – that the person has an ability with a cool mind to contemplate a murder and that while he's in that state, he in fact deliberates over whether this is my plan. And we also cited cases that among the things that a court would look to are the relationship between the parties, which there wasn't any, and any other actions between them. One finding that the court will oversight it, which was one of these factors, is that the nature – the manner of the killing was so particular that it must have been the product of a calculated plan. And we would argue that the episode here is the antithesis of that. It absolutely – this was not a well-thought-out plan. It was in the middle of a busy street during rush hour in Brooklyn, and the shot was fired, first of all, not directly at the person's head, at the side of the van. I don't want to lose my train of thought, but I think that isn't – that is consistent with an intent to scare. You don't have to – but I don't want to lose – let me stick with the premeditation point. The evidence here is that this was as poorly – if this were planning, it is monstrously bad planning. He was in a place where he had to get caught, which he was within minutes because there was no way to get away quickly in a crowded area. There were obviously lots and lots of witnesses in a part of Brooklyn that has businesses and lots of people on the street at 4 in the afternoon. So nothing about the evidence supports what I believe the cases stand for. They're cited in our brief, and we believe that if the court applies the meaning of premeditation that those cases discuss, there had to have been, first, a cool mind, and second, some actual deliberation during the period when there was a cool mind. Because there's neither – this court – the case should not be elevated to murder of the first degree. All right. Well, thank you. We will reserve decision. Thank you. That concludes the –